IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| KENNETH RAY RHODES | § | |
| Plaintiff | § | |
| v. | § | Case No. 5:22-cv-6 |
| GARRETT SAXTON, ET AL. | § | |
| Defendants | § | |

## ORDER OF DISMISSAL

Plaintiff Kenneth Ray Rhodes, proceeding *pro se*, filed the above-styled and numbered civil action complaining of alleged violations of his constitutional rights. Docket No. 1.[1] The case was referred to the United States Magistrate Judge in accordance with 28 U.S.C. § 636. The named Defendants are Telford Unit Practice Manager Garrett Saxton, Nurse Manager Rachel Burleson, Nurse Practitioner Tonia McNaughton, and licensed vocational nurse Vera Watson, all of whom are employees of the University of Texas Medical Branch, which provides medical care for prisoners at the Telford Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, where Plaintiff was confined.

Plaintiff complains of deliberate indifference to his serious medical needs in connection with incidents beginning on May 19, 2021. *See* Docket No. 1 at 12. On that date, he alleges that he began experiencing irritation upon urination and noticed blood in his urine. *Id.* He had a video appointment scheduled with a provider named Jamie Martin on May 25, 2021 for the coumadin clinic and had a temperature of 102 degrees. *Id.* at 2. But the nurse on duty, Nurse Watson, told him to go back to his cubicle and wait until his appointment time despite knowing his temperature was dangerously high. *Id.*

---

[1] The Court also considers Plaintiff's amendments to the Complaint. *See* Docket Nos. 20, 37.

When he saw Martin, Plaintiff says that she asked him about his temperature and he told her he had suffered a urinary tract infection for a week. *Id*. at 3. She prescribed him antibiotics for 10 days, but his infection did not clear up. *Id.* A nurse named Palmer took a urine sample, which verified he still had blood in his urine. *Id.* Plaintiff was scheduled to see another provider, Nurse Practitioner McNaughton, 11 days later. *Id.* Plaintiff states that he saw McNaughton on July 2, 2021, but she told him that no medication would be prescribed and advised him to drink water, saying that hopefully the bleeding in his urine would clear up. *Id.*

According to Plaintiff, he had appointments to see McNaughton on set on July 14, July 16, and July 19, 2021 but she rescheduled him each time. *Id.* at 13–14. On July 21, 2021 Plaintiff had another coumadin clinic visit on video with Martin, and he told her he was afraid to keep taking coumadin because he was concerned about possible uncontrolled internal bleeding. *Id.* at 4. Martin sent a request to the pharmacy for an antibiotic called ciproflaxin, but this was non-formulary and so it took a few days to be approved. *Id.* Plaintiff states that after taking this medication for four days, he no longer saw blood in his urine, but that he had this blood for a total of 70 days. *Id.* at 11–12.

Plaintiff also complains that on July 9, 2021, after receiving his medications at the pill window, he turned to leave and passed out. *Id.* at 3. Plaintiff alleges that a wheelchair-bound inmate named Valderus attempted tried to break his fall but could not, so Plaintiff fell to the ground. *Id.* According to Plaintiff, Nurse Watson was only about six or seven feet away but did nothing to assist him, and in fact told Valderus and another inmate named Dickerson not to help Plaintiff. *Id.* at 3–4. A medical aide named Johnson temporarily stopped the pill window to come assist him. *Id.* at 4. Plaintiff stated that he notified Practice Manager Garrett Saxton and Nurse Manager Burleson of what happened, but nothing was done. *See generally, id.*

Defendants filed a motion for summary judgment, to which Plaintiff filed a response. Docket Nos. 33, 54. After reviewing the pleadings and the summary judgment evidence submitted by the

parties, the Magistrate Judge issued a Report recommending that the motion for summary judgment be granted. Docket No. 55. Plaintiff filed objections to the Report on February 20, 2024. Docket No. 57.

After setting out the facts of his case, Plaintiff's objections first assert that the Defendants acted in violation of prison policy and therefore do not have immunity. *Id.* at 3–4 citing an Eighth Circuit case called *Howard v. Atkinson*, 887 F.2d 134, 140 (8th Cir. 1989). Specifically, he contends that Watson's failure to act when she saw him fall violated the TDCJ medical emergency policy. He also argues that he is entitled to declaratory and injunctive relief because even though he is no longer at the Telford Unit, he could be transferred back there in the future.

Violations of prison policy do not themselves amount to constitutional violations and thus cannot serve to waive or abrogate the defense of qualified immunity. *Hill v. Walker*, 718 F.App'x 243, 250 (5th Cir. 2018) (noting a failure to follow the prison's own regulations does not, in itself, constitute a constitutional violation). The Eight Circuit *Howard* case Plaintiff relies on stands for the unremarkable proposition that qualified immunity applies only to discretionary functions. *Howard*, 887 F.2d at 140. In that regard, the Fifth Circuit has clarified that the medical care administered and provided to prisoners involves discretion and is thus a function for which qualified immunity applies. *Rombach v. Culpepper*, Slip Op. No. 20-30554, 2021 U.S. App. LEXIS 20713, 2021 WL 2944809, *10 (5th Cir. 2021). Plaintiff's objection on this point is without merit.

Plaintiff also argues that he could be transferred back to the Telford Unit, and so his claims for declaratory and injunctive relief should remain viable (Docket No. 57 at 4), the Supreme Court has explained that a mere physical or theoretical possibility that an alleged action will recur is not sufficient to evade mootness; rather, the litigant must show a "reasonable expectation" that the same controversy will recur. *See Spencer v. Kenma*, 523 U.S. 1, 17 (1998). Thus, the mere fact that Plaintiff could possibly be transferred back to the Telford Unit at some point in the future is not a sufficient basis upon which to conclude that his claims for declaratory and injunctive relief were not rendered

moot by his transfer away from that unit. *See id.* Plaintiff's objection on this point is without merit.

Next, Plaintiff alleges the report ignores evidence about what Watson saw when Plaintiff passed out at the pill window. Docket No. 57 at 4–5. This objection is without merit as the report assumes that Watson watched the fall. Docket No. 55 at 14–15. The report correctly found that even if Watson watched the fall and did nothing, Plaintiff did not demonstrate a constitutional violation because the medical records do not provide evidence of substantial harm. *Id.*

Plaintiff asserts that Nurse Practitioner Tonia McNaughton was deliberately indifferent to his serious medical needs, arguing for the first time in his objections that her actions were motivated by race. Docket No. 57 at 5–7. He contends that the Defendants have "unlimited resources to provide what the Court requests" but that McNaughton decided not to give him effective treatment. *Id.* at 5. He concedes that he received one regimen of antibiotics but complains that it did not work. *Id.* Plaintiff also complains of being rescheduled to see the provider several times. *Id.* at 6–7.

As the Magistrate Judge correctly observed, McNaughton's advice that Plaintiff drink more water is in line with normal treatment for persons with urinary tract infections. *See* Docket No. 55 at 12–13. The evidence shows that Plaintiff had already been on two rounds of antibiotics and McNaughton ordered labs to be done. *See* Docket No. 33-1 at 4; *see also*, *e.g.*, *id.* at 12–51. Even crediting Plaintiff's position that these medical records are inconsistent with his allegations, and Plaintiff admits at least one round of antibiotics had been provided and the antibiotics did not resolve his infection. Accordingly, the fact that McNaughton chose to wait for lab results rather than prescribing more antibiotics is not deliberate indifference to Plaintiff's serious medical needs regardless of his disagreement with this course of treatment. *See e.g.*, *Petzold v. Rostollan*, 946 F.3d 242, 249–51 (5th Cir. 2019). Plaintiff's claim of racial discrimination is wholly conclusory and in any event is raised for the first time in his objections and thus is not properly before the Court. *Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001). Plaintiff's objection on this point is without merit.

Plaintiff asserts that the medical records he provided show "multiple encounters where Defendants' medical records are inconsistent with the allegations provided by Defendants wholly dishonesty [sic]." Docket No. 57 at 7–8. Aside from the number of rounds of antibiotics he received, Plaintiff's objections do not specifically identify any such encounters. This objection is without merit. The Magistrate Judge appropriately reviewed the evidence provided by Plaintiff and recounted this evidence in the report. *See e.g.*, Docket No. 55 at 8–10.

Plaintiff also complains about the affidavit interpreting his medical records from Dr. Bobby Vincent, saying that Dr. Vincent can only judge what was presented to him and was not present to see the actions performed. *Id.* at 7. As an expert witness, Dr. Vincent was qualified to provide an affidavit explaining the contents of Plaintiff's medical records, and these records amount to sufficient facts upon which to base an opinion. *See* FED. R. EVID. 702; *Moore v. International Paint, LLC*, 547 F.App'x 513, 515–16 (5th Cir. 2013). Personal knowledge of the events recounted in the records is not required. FED. R. EVID. 703; *see Daubert v. Merrill Dow Pharms. Inc.*, 509 U.S. 579, 591–92 (1993) ("Unlike an ordinary witness. . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). This objection is without merit.

Finally, Plaintiff contends that the denial of appointed counsel violated his Sixth Amendment rights and amounted to an abuse of discretion. *Id.* at 8–10. The Sixth Amendment right to counsel applies only to criminal prosecutions, not civil cases such as the present one. *Player v. Reese*, 300 F.App'x 310, 311 (5th Cir. 2008) (*citing Sanchez v. United States Postal Service*, 785 F.2d 1236, 1237 (5th Cir. 1986)). Plaintiff argues that he should have received appointed counsel because of his health problems, Defendants' voluminous filings, and his lack of legal and medical experience. Docket No. 57 at 8–10. But the record shows that Plaintiff has been active in prosecuting his case, filing well-drafted and cogent pleadings including a motion for extension of time to respond to the Defendants' motion for summary judgment, a response to this motion, and objections to the report of

the Magistrate Judge. *See e.g.*, Docket Nos. 53, 54, 57. Plaintiff, accordingly, has not shown the extraordinary circumstances required for appointment of counsel in a civil rights case. *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982); *see also Taylor v. Slatkin*, Civil Action No. 3:02-cv-2404, 2003 U.S. Dist. LEXIS 8344, 2003 WL 21479076, *1 (N.D. Tex., May 13, 2003) (denying appointment of counsel where plaintiff complained that ill health prevented him from pursuing his case, but the court observed that the plaintiff had not lost his ability to prosecute his case and had filed a number of motions which were pending at that time). This objection is without merit.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (Docket No. 55) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Defendants' motion for summary judgment (Docket No. 33) is **GRANTED** and the above-styled civil action is **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 13th day of March, 2024.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE